**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
|  | * |  |
| **AUGUSTINE KYEI,** | * |  |
| **Plaintiff,** | * |  |
| **v.** | * | **Case No.: BPG-11-0750** |
| **HARMONY HALL, INC.,** | * |  |
| **Defendant.** | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4.  (ECF No. 11.) Currently pending is defendant's Motion for Summary Judgment, and plaintiff's opposition. (ECF Nos. 56, 57.)  The undersigned directed the parties to file supplemental briefs, which were also considered.  (ECF Nos. 60, 63.)  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendant's motion (ECF No. 56) is DENIED.

Plaintiff alleges in her Third Amended Complaint that she is "a Black female United States permanent resident born in Ghana" who, as a result of her complaints regarding racially discriminatory actions by coworkers and supervisors, was retaliated against by defendant when defendant transferred her, which amounted to terminating her employment.  (ECF No. 51.) Defendant Harmony Hall, Inc., in its motion, argues that summary judgment should be granted because plaintiff has failed to establish each element of a prima facie case of retaliation, and because defendant had a legitimate, nondiscriminatory reason for the action taken.  (ECF Nos.

56, 63.)  Plaintiff asserts that she can make a prima facie case, and that the reasons proffered by

defendant for the adverse employment action are pretextual.  (ECF Nos. 57, 60.)

Summary judgment is appropriate only when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A

genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding

a motion for summary judgment, the court views all facts and makes all justifiable inferences in

favor of the non-moving party.  Id. at 255.

## I.     **Prima Facie Case**

In order to establish a prima facie case of retaliation, an employee must show that: (1) she

engaged in protected activity; (2) the employer took an adverse employment action against her;

and (3) there was a causal link between the protected activity and the adverse employment

action.  Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).  Regarding the first element, to

prove that she engaged in protected activity, plaintiff must show that she opposed an unlawful

employment practice.[1]  Adams v. Giant Food, Inc., 225 F. Supp. 2d 600, 605 (D. Md. 2002).

Protected activity "may include staging informal protests and voicing one's own opinions in

order to bring attention to an employer's discriminatory activities . . . as well as complaints about

suspected activities."  E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005)

(internal quotation marks and citation omitted).  Plaintiff need not establish that the employment

practice she opposed actually violated Title VII, but she must show that she subjectively held a

---

[1] Plaintiff may also establish that she engaged in protected activity by showing that she
participated in a Title VII investigation, proceeding, or hearing, Adams, 225 F. Supp. 2d at 605,
but there has been no allegation that plaintiff in this case did so.

good faith belief that the employer was engaged in unlawful employment practices, and that belief was objectively reasonable in light of the circumstances.  <u>Adams</u>, 225 F. Supp. 2d at 606.

      Defendant argues in its motion that there is no evidence that plaintiff engaged in protected activity.  (ECF No. 56 at 14.)   Plaintiff claims that between October 2009 and January 22, 2010, she complained to her supervisor, Ms. Waterman, several times that coworker Ms. Cavallaro displayed "racial animus toward her because [Ms. Cavallaro] would not follow [plaintiff's] instructions" and those of other African nurses, and that Ms. Cavallaro "repeatedly bragged to African employees that she was a white native American and that she got her way at Harmony Hall because the company received money from the government."  (ECF No. 57 at 7, 11.)  Plaintiff further alleges that Ms. Cavallaro stated that "[Cavallaro] could do whatever she wanted" because of her race, and that when Ms. Cavallaro made "nursing mistakes, nothing ever happened to her and she made it known that nothing would happen to her."  (Id. at 4.)  Plaintiff alleges that Ms. Waterman took no action in response to her complaints.  (<u>Id.</u> at 11.)  On January 10, 2010, plaintiff alleges that she was offered and had accepted the position of 2nd Nurse on the 3rd Floor.  (<u>Id.</u> at 3.)  Defendant admits that it announced that plaintiff would be going to the 3rd floor.  (ECF No. 56 at 6.)  On January 22, 2010, plaintiff alleges that defendant gave the 2nd Nurse position, which plaintiff had already accepted, to Ms. Cavallaro, who was less qualified.  (ECF No. 57 at 4.)  Plaintiff alleges that in a meeting on that date, she was informed by Ms. Waterman that she would be transferred to Lorien Nursing Home, a facility located near Harmony Hall.  (<u>Id.</u> at 4-5.)  In the same meeting, plaintiff alleges that she complained to Ms. Waterman and Harmony Hall's Human Resources Director, Ms. Cleveland, that it was "unfair and discriminating" to give the 2nd Nurse position to Ms. Cavallaro instead of to plaintiff.  (<u>Id.</u> at

5, 8, 11-12.)  Plaintiff alleges that Ms. Cleveland told her to go to Lorien or write her resignation letter.  (ECF No. 60 at 2.)

According to plaintiff's version of these events, her complaints of race discrimination went unanswered for a period of four months.  It is not clear whether plaintiff's initial complaints regarding Ms. Cavallaro's behavior could have stemmed from a reasonable belief on plaintiff's part that defendant was engaged in unlawful employment actions.  Over that four-month time period of complaints, however, defendant took no action and gave plaintiff no indication that her complaints would be addressed, which could give rise to a reasonable belief that defendant was unlawfully discriminating based on race.  That belief would have become even more clearly reasonable when, on January 22, 2010, the position that plaintiff had already accepted was given to the coworker who was the subject of her discrimination complaints and who plaintiff believed was less qualified, and plaintiff was transferred to another facility.  Plaintiff again asserted to her employer, at the January 22nd meeting, that management was demonstrating the very discriminatory conduct about which she had been complaining.  (ECF No. 57 at 7, 12.)  Based on these allegations, a reasonable jury could conclude that plaintiff engaged in protected activity by complaining to her employer about employment actions that she actually and reasonably believed were unlawful.  Adams, 225 F. Supp. 2d at 605-06.

As to the second element of a prima facie case of retaliation, defendant argues that there was no adverse employment action taken against plaintiff.  An adverse employment action is one that would have dissuaded a reasonable employee from making or supporting a charge of discrimination.  Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation marks and citation omitted).  Examples include actions that "constitute[] a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits."   Id.

      In its motion, defendant alleges that, on January 22, 2010, plaintiff was transferred from

Harmony Hall Assisted Living facility to Lorien Nursing Home for orientation into a program

designed to increase her clinical skills.  (ECF No. 56 at 15.)  Supervisor Ms. Waterman testified

that plaintiff was informed in the meeting that the orientation would last for two weeks.  (ECF

No. 57 at 16.)  Defendant states that the move involved no reduction in pay, hours, or benefits.

(ECF No. 56 at 15-16.)  Plaintiff alleges that she was "abruptly taken out of her position on

January 22, 2010" and that she no longer had a job after that date.  (ECF No. 57 at 13.)  Ms.

Waterman testified in her deposition that plaintiff accused Ms. Waterman of trying to fire her in

the January 22, 2010 meeting.  (Id. at 17.)  Then, according to plaintiff, upon arriving at Lorien

on January 25, 2010, she informed Lorien's staff of the events at Harmony Hall that led to the

transfer.  (Id. at 13.)  Plaintiff alleges that, in a meeting later that day, Lorien's Director of

Human Resources Ms. Brown[2] told plaintiff that the only position available was the 3 p.m. to 11

p.m. shift.  (Id. at 5, 13-14.)  Plaintiff told Ms. Brown that she had worked the 7 a.m. to 3 p.m.

shift because she had young children, and it was impossible for her to work the 3 p.m. to 11 p.m.

shift.  (ECF No. 57 at 13.)  Plaintiff alleges that she called Ms. Cleveland, Harmony Hall's

Human Resources Director, and was told, "There is nothing I can do about it."  (Id. at 5.)

Plaintiff argues that this was a hardship that constituted a material change in the conditions of

employment.  (ECF No. 60 at 5.)  Plaintiff alleges that Ms. Brown then clocked plaintiff out and

told her to go home.  (ECF Nos. 57 at 14; 60 at 4.)  Plaintiff alleges that this amounted to

---

[2] Harmony Hall's Human Resources Director's full name is Dee Brown Oden.  (ECF No. 56-8.)
Throughout most of the pleadings, she is referred to as Ms. Brown, but also appears sometimes
as Ms. Oden.  For consistency, the undersigned will refer to her as Ms. Brown.

termination.  (ECF No. 57 at 14.)  Plaintiff maintains that the discriminatory remarks about

which plaintiff complained—Ms. Cavallaro's bragging about getting her way because of race—

"came to fruition," sending a message that "if you complain, you lose your job."  (ECF No. 57 at

12-13.)  Defendant maintains, according to Ms. Brown and Ms. Cleveland, that plaintiff was not

terminated, which contradicts plaintiff's allegations.  (ECF Nos. 56 at 14-16; 63 at 3.)

There is a clear factual dispute regarding what exactly happened on January 25, 2010 and

whether plaintiff was being terminated.  A reasonable jury could also conclude that the change in

plaintiff's schedule amounted to an adverse employment action.  See Burlington N. & Santa Fe

Ry. Co. v. White, 548 U.S. 53, 69 (2006) (citing Washington v. Ill. Dep't of Revenue, 420 F.3d

658, 662-63 (7th Cir. 2005) (jury could find that reassignment to a new position, with the same

pay rate but different hours, was nonetheless materially adverse to an employee with a particular

child care schedule)).  Accordingly, there are genuine disputes of material fact regarding whether

plaintiff suffered an adverse employment action.

With regard to the third element, defendant argues that plaintiff cannot, as a matter of

law, establish a causal link between plaintiff's engaging in protected activity and any alleged

adverse employment action taken against her.  "To satisfy the third element, the employer must

have taken the adverse employment action *because* the plaintiff engaged in protected activity."

Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)

(emphasis in original).  "Since, by definition, an employer cannot take action because of a factor

of which it is unaware, the employer's knowledge that the plaintiff engaged in protected activity

is absolutely necessary to establish the third element of the prima facie case."  Id.  A causal

connection can be shown by the proximity between the time of the protected activity and the

time of the adverse action.  Id. ("[E]vidence that the alleged adverse action occurred *shortly* after

the employer became aware of the protected activity is sufficient to satisfy the less onerous burden of making a prima facie case of causation.") (emphasis in original) (citation, internal quotation marks, and alterations omitted).

Defendant argues that it did not have the requisite knowledge of plaintiff's alleged protected activity to show a causal link.  (ECF Nos. 56 at 17; 63 at 9.)  Lorien's Human Resources Director Ms. Brown stated that she did not know the details of plaintiff's situation.  (ECF No. 56 at 17.)  Plaintiff, however, alleges that she informed Lorien why she was reporting there on January 25, 2010.  (ECF No. 57 at 13-14.)  Moreover, plaintiff alleges that she first complained in October 2009, and her complaints continued through December 2009.  Given the common ownership and management of Harmony Hall and Lorien, a reasonable jury could infer that the Human Resources Departments in both facilities knew of plaintiff's many alleged complaints.  Plaintiff alleges that she complained again on January 22, 2010 and was terminated just three days later.  (Id. at 13.)  Such a short period between protected activity and adverse employment action is sufficient to generate a factual issue as to the causation requirement.  See, e.g., Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (termination six months after last complaint and one month after hearing showed adequate proof of causation).  There is a genuine issue of material fact as to defendant's employees' knowledge of the alleged protected activity, and the temporal proximity is sufficiently close so as to allow a reasonable juror to infer causation.

In sum, taking the facts in the light most favorable to plaintiff, she has established that there are genuine issues of material fact precluding summary judgment as to each element of her prima facie case of retaliation.

II.     **Legitimate, Nondiscriminatory Explanation**

A defendant may rebut a prima facie case of retaliation by articulating a legitimate, nondiscriminatory explanation for the adverse employment action.  Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011).  Here, defendant alleges that it transferred plaintiff to Lorien for orientation to increase her clinical skills.  (ECF No. 56 at 15.)  Harmony Hall supervisor Ms. Waterman stated in her Declaration attached to defendant's motion that Ms. Cavallaro was selected for the 2nd Nurse position instead because of her ability to "independently function." (ECF Nos. 56-6; 57 at 16.)  Ms. Waterman testified in her deposition that plaintiff needed more experience and that she was "not functioning fully" in her existing position at Harmony Hall. (ECF No. 57 at 16-17; 57-7 at 39.)  Based on these statements, defendant has articulated an explanation for the allegedly adverse employment action that a reasonable jury could conclude was a legitimate, nondiscriminatory reason.  Therefore, there is a genuine issue of material fact as to whether defendant can rebut plaintiff's prima facie case of retaliation.

III.    **Pretext**

Because defendant has alleged an explanation that a jury could conclude is a legitimate, nondiscriminatory reason for the actions that it took, plaintiff bears the burden of proving that the reasons given were merely pretextual.  Hoyle, 650 F.3d at 337.  In the summary judgment context, plaintiffs "can meet their burden of proving pretext either by showing that [the employer's] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of . . . discrimination."  Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (citations and internal quotation marks omitted).  The general standards for summary judgment still apply; it is sufficient for a plaintiff to present evidence from which a

reasonable jury could find in her favor.  <u>Wesley v. Arlington Cnty.</u>, 354 F. App'x 775, 781-82 (4th Cir. 2009).

Because plaintiff consistently received positive evaluations while employed by defendant, plaintiff argues that she was well qualified for the 2nd Nurse position.  (ECF No. 57 at 2, 18, 20.)  Ms. Cavallaro, plaintiff alleges, was not qualified to work at an Assisted Living facility such as Harmony Hall.  (ECF Nos. 57 at 7-8, 18; 57-6.)  Defendant's employee, Ms. Waterman, stated in her Declaration that, because of changing needs at Harmony Hall, plaintiff was sent to orientation to increase her clinical skills and independent functioning.  (ECF No. 56-6.)  In her deposition testimony, Ms. Waterman stated that she and plaintiff's former supervisor, Ms. Kamga, agreed that plaintiff was not functioning properly in her existing role at Harmony Hall.  (ECF Nos. 57 at 17; 57-7 at 39.)  Ms. Kamga, however, apparently did not join Ms. Waterman in her assessment of plaintiff's ability, stating in her Declaration that plaintiff "was very knowledgeable and had good nursing skills," and was surprised to hear that plaintiff was being sent to Lorien instead of the 3rd Floor at Harmony Hall.  (ECF Nos. 57 at 17; 57-6.)  Ms. Kamga, who also supervised Ms. Cavallaro, stated that Ms. Cavallaro was a "problem employee."  (ECF No. 57-6.)  Ms. Kamga stated that she complained about Ms. Cavallaro to Ms. Waterman, and wrote several incident reports about Ms. Cavallaro's conduct, but that no action was taken.  (<u>Id.</u>)

Drawing all justifiable inferences in plaintiff's favor, it is clear that there are factual issues as to whether defendant's explanations for transferring plaintiff, and the actions that followed, were pretextual.  Evidence of defendant's decision to give the 2nd Nurse position to Ms. Cavallaro, so soon after announcing that plaintiff would get the job, coupled with the contradictory testimony from two of defendant's employees, Ms. Waterman and Ms. Kamga, and

plaintiff's positive evaluations could allow the jury to conclude that defendant's explanations are not worthy of credence.  Therefore, summary judgment is not appropriate as there are factual issues regarding whether defendant's proffered reasons for its actions are pretextual.

**IV.**   **<u>Conclusion</u>**

As detailed above, there are genuine disputes of material fact and, therefore, summary judgment is not appropriate.  For the foregoing reasons, defendant's motion for summary judgment (ECF No. 56) is DENIED.


Date:   12-21-12                                        /s/

Beth P. Gesner
United States Magistrate Judge